UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00060-TBR

TORI T. CURTIS,                                                    PLAINTIFF

v.

MICHAEL T. BRADFORD, *et. al.*,                            DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on motions for summary judgment by Plaintiff Tori Curtis, [DN 64], and Defendants, Michael T. Bradford, Samantha M. Wyatt (formerly Samantha M. Paris), William B. Morrison, and Randy White, [DN 67.] For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's motion for summary judgment, [DN 64], is **DENIED**.

BACKGROUND

Tori Curtis brings this action against Defendants Michael Bradford, Samantha Wyatt, William Morrison, and Randy White, alleging that each Defendant retaliated against Curtis in violation of the First Amendment to the United States Constitution for filing a Prison Rape Elimination Act (PREA) grievance against Officer Bradford on November 7, 2015. [DN 23 at 9 (Amended Complaint); DN 67-2 at 1–2 (Extraordinary Occurrence Report).]

At all times relevant to this action, Curtis was an inmate at Kentucky State Penitentiary (KSP). [*See* DN 67-2 at 1.] Curtis alleges that on November 7, 2015, Officer Bradford was making his rounds in the cell house at the same time as Curtis had a privacy screen in his cell "up half way up on the cell bars because [he] was shaving [his] body." [DN 23 at 9.] According to Curtis, as Bradford walked passed his cell, he stopped and stepped back in front of the cell, saw

1

Curtis shaving, and said "I thought only sissies shaved their bod[ies] yard punk or yard sissie," and then he "continued off the walk." [*Id.*] As a result, Curtis filed a complaint under the PREA.

The "Extraordinary Occurrence Report" completed by KSP related to Curtis's complaint states that, at approximately 8:40 a.m. on November 7, 2015, Curtis reported Officer Bradford for the statement "I thought only sissies shave their chest." [DN 67-2 at 2.] Accordingly, KSP commenced a PREA investigation. Lieutenant Derek Roberts interviewed Curtis around 10:00 the same morning. [*Id.*] During the interview, Curtis stated that Officer Bradford's comment was "I thought only gay people shave their bodies." [*Id.*] According to the Report, Curtis was "afraid that Officer Bradford will judge who he is and if he has a diabetic incident [Office Bradford] would not report it to the medical department." [*Id.*] The Report further notes that "Curtis did not claim any type of voyeurism or sexual comment only the degrading comment about his sexual preference." [*Id.*]

Lieutenant Roberts next interviewed Officer Bradford around 10:48 a.m. [*Id.*] "Officer Bradford stated he never made the statement and never spoke to Inmate Curtis" that day. [*Id.*] Next, around 12:12 p.m., Lieutenant Roberts reviewed the video footage, of the area at issue, Five Cellhouse First Floor A&B Walk, for the day and time in question. [*Id.*] The Report summarizes the video footage as follows:

> Officer Bradford made a round at approximately 7:10 a.m. on A&B Walk with his lock down sheet and at no time stop[ped] and step[ped] back to cell B10 and ma[d]e conversation. At approximately 7:49 a.m. Officer Bradford was on the walk passing out property bags for cell moves. At approximately 8:18 a.m., Officer Bradford entered the walk proceeded to the area of B10 and turned and exited the walk. The video footage provided no additional information for the investigation and due to no audio it could not be verified if the statement was made or not.

[*Id.* at 2.] Ultimately, "Lieutenant Roberts found no evidence to support Inmate Curtis's claim of Staff Sexual Harassment against Officer Bradford. Lieutenant Roberts [ ] determined the claim to be unsubstantiated and therefore the Kentucky State Police were not notified." [*Id.*]

Four months later, on March 8, 2016, Officer Bradford filed a Disciplinary Report Form for Curtis and another inmate, Tommy Wilson. [DN 67-3 at 1–2 (Bradford Affidavit).] According to Officer Bradford, on that date, he was monitoring the inmate showers when he observed Wilson approach Curtis "and kiss him on his right shoulder while they were in the back of the showers with no clothes on." [*Id.* at 1.] Because "Curtis did not make an effort to stop Inmate Wilson nor did he give any indication that Inmate Wilson's behavior was non-consensual," Office Bradford believed that the contact was consensual. [*Id.* at 2.] Therefore, he completed Disciplinary Report Forms for both Curtis and Wilson for inappropriate sexual activity, which is against KSP policy. [*Id.*]

Defendant Samantha Wyatt, a Correctional Lieutenant at KSP, was "assigned to investigate the Disciplinary Report issued to Inmate Curtis as required by Corrections Policy and Procedure (CPP) 15.6." [DN 67-4 at 1 (Wyatt Affidavit).] Wyatt interviewed Officer Bradford, Curtis, reviewed available documentation, and determined "there was sufficient evidence to support the charge against" Curtis. [*Id.* at 2.]

On June 13, 2015, "the Adjustment Committee [ ] found [ ] Curtis guilty of inappropriate sexual behavior with another person." [DN 67-5 at 1 (Morrison Affidavit).] Defendant Morrison, Chairman of the Adjustment Committee, states in his Affidavit that, "[b]ased on the evidence presented at the disciplinary hearing, [he] believed there was sufficient evidence to support the charge against" Curtis. [*Id.*]

Curtis appealed the Disciplinary Report and the Adjustment Committee's findings to Warden Randy White, who is responsible for "the administrative and appellate review of all disciplinary reports prepared at the prison." [DN 67-6 at 1 (White Affidavit).] White states that, "[b]ased on [his] review of the disciplinary report and the Adjustment Committee's finding, [he] believed there was sufficient evidence to support the charge against" Curtis. [*Id.*] The Adjustment Committee gave Curtis a penalty of ninety days of segregation time. [DN 23 at 11.]

In this lawsuit, Curtis alleges that Officer Bradford violated Curtis's First Amendment right to freedom of speech by filing the Disciplinary Report Form regarding the March 8, 2016 shower incident. [*See* DN 23 at 7.] According to Curtis, Officer Bradford's allegations about what happened in the showers on March 8, 2016 "were false [and] never happen[ed]." [*Id.*] Additionally, Curtis alleges that, even if Wilson did kiss his shoulder in the shower, Wilson did this behind him and therefore Curtis did not have knowledge of it. [DN 69 at 2 (Response to Defendants' Motion for Summary Judgment).] Curtis states that he "feel[s] like [he] know[s] the only reason [Officer] Bradford made this . . . false story up is because he still felt some type of way for [Curtis] filing a (PREA) on him 4 months before this incident." [DN 69 at 3, DN 69-1 at 1.] Finally, Curtis alleges that the other Defendants, Wyatt, Morrison, and White, also retaliated against him for filing a PREA allegation against Officer Bradford. [DN 23 at 11.] Curtis has moved for summary judgment, as have all Defendants.

STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Nor will mere speculation suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

DISCUSSION

The Sixth Circuit has identified three elements of a First Amendment retaliation claim:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With regard to the first element, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Maben*, 887 F.3d at 264 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "However, the right to file grievances is protected only insofar as the grievances are not 'frivolous.'" *Id.* (citing *Herron*, 203 F.3d at 415). Here, Curtis's PREA grievance, through which Curtis "was pursuing a grievance about prison conditions and seeking redress of that grievance," *id.*, qualifies as protected conduct.[1]

As to the second element, which requires an adverse action that would deter the ordinary person from engaging in the protected conduct, *id.*, Defendants do not dispute that Curtis satisfies this element. [*See* DN 67-1 at 4–5.] Specifically, ninety days in segregation certainly qualifies as an adverse action for purposes of Curtis's First Amendment claim. [DN 23 at 11.] *See Patterson v. Godward*, 370 F. App'x 608, 608 (6th Cir. 2010) (Defendant alleged various

---

[1] Defendants argue, however, that because the KSP investigation determined that there was "no evidence to support Inmate Curtis's claim of Staff Sexual Harassment against Officer Bradford," [DN 67-2 at 2], that Curtis's PREA allegation was frivolous. [DN 67-1 at 4.] However, viewing the record in the light most favorable to Curtis, as the Court must do at this stage, the Court finds that an allegation of PREA misconduct is sufficient for protected conduct, regardless of whether the allegation was ultimately determined to be meritless. The Sixth Circuit has "also described a non-frivolous grievance as a 'legitimate' grievance." *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Here, Curtis's allegation that Officer Bradford made an inappropriate comment about his body or sexual orientation is an arguably legitimate grievance for First Amendment purposes. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) ("Because Pasley's threatened grievance was arguably legitimate, his conduct was arguably protected by the First Amendment.").

"adverse actions against him, e.g., being placed in segregation."); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) ("[T]his court has concluded that placing a prisoner in administrative segregation is an adverse action.").

Finally, the third element requires "a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Maben*, 887 F.3d at 264. In their motion for summary judgment, Defendants argue that Curtis "appears to be relying solely on the temporal proximity of his PREA complaint to the disciplinary report he received to establish a retaliatory motive on the part of the Defendants. However, the Sixth Circuit Court of Appeals has held that a span of four months between the protected activity and the alleged retaliation is 'insufficient to support an [inference] of retaliation.'" [DN 67-1 at 5 (quoting *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986)).][2]

Temporal proximity can, in certain circumstances, suffice for an inference as to causation. The Sixth Circuit has explained that, because direct evidence of causation is rare, to demonstrate a genuine dispute of fact as to the third element, "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Thaddeus-X*, 175 F.3d at 399. While Defendants are correct that four months, standing alone, is insufficient temporal proximity to raise an inference of causation, Defendants are incorrect that Curtis relies "solely on temporal proximity." Rather, Curtis also alleges that Officer Bradford completely fabricated the alleged shower incident on March 8, 2016. [*See* DN 23.]

---

[2] Defendants also argue in their motion that the fact that Curtis was found guilty of inappropriate sexual behavior by KSP "checkmates" Curtis's First Amendment retaliation claim. [DN 67-1 at 6–7.] However, after the Sixth Circuit's recent decision in *Maben v. Thelen* in April, the checkmate doctrine is not good law. *See Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) ("This Court has never adopted the 'checkmate doctrine' in a published opinion. We now reject that doctrine. A finding of guilt at a prison misconduct hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim."

With regard to Officer Bradford, Curtis alleges, first, that Officer Bradford's allegations about Curtis and Wilson in the showers on March 8, 2016 "were false [and] never happen[ed]." [DN 23 at 7.] In Curtis's view, Officer Bradford falsely accused Curtis and Wilson of inappropriate sexual behavior to get back at Curtis for filing a PREA complaint against Officer Bradford four months earlier in November 2015. [DN 23 at 11.] In support of his claim that Officer Bradford's accusations were false, Curtis submits two affidavits in addition to his own sworn testimony.[3] [*See* DN 84.] First, in a sworn affidavit, Tommy Wilson, the other inmate allegedly involved in the inappropriate sexual activity, states that Officer Bradford's allegations "were not true at all" and that "never at no point [in] time" did Wilson "touch Curtis at all" or "lean to kiss Curtis." [DN 84-1 (Wilson Affidavit).] Second, Curtis submits a sworn affidavit from another inmate, Daniel Darby, who claims he was in the shower house in a shower post next to Curtis and Wilson on March 8, 2016. [DN 84-2 at 1 (Darby Affidavit).] According to Darby, "at no point or time did neither Mr. Wilson or Mr. Curtis approach one another and touch one another at all in any inappropriate manner." [*Id.*] Darby further writes "I don't know why the Officer Mr. Bradford who was watching over the shower house . . . chose to lie." [*Id.*]

Though both Wilson and Darby's affidavits were already filed at the time the Court instructed Defendants to file a reply, [DN 88 (April 18, 2018 Order)], Defendants did not address the affidavits, or the allegations therein, in their reply. [*See* DN 91.] Rather, they incorrectly assert that, "[e]ven in his Responses the Plaintiff offers this Court nothing more than his own self-serving statements that the actions taken against him were done in retaliation." [DN 91 at 1.]

---

[3] The Court notes that "[e]ach of [Curtis]'s pleadings was signed under penalty of perjury, and is therefore 'sufficient to qualify as an affidavit for the purposes of summary judgment.'" *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017), cert. denied, 138 S. Ct. 637 (2018) (quoting *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992)).

This is not the case, as Curtis has filed supporting affidavits from witnesses asserting that Officer Bradford's allegations were completely false.

Viewing the record in the light most favorable to Curtis, the Court finds that he has alleged sufficient facts and presented sufficient evidence to create a genuine dispute for trial as to whether Officer Bradford "was motivated at least in part by the [Curtis]'s protected conduct" in violation of the First Amendment. *Maben*, 887 F.3d at 264. Based on Curtis's sworn allegations and the sworn affidavits of Wilson and Darby, a reasonable jury could determine what Officer Bradford fabricated the allegations about the shower incident on March 8, 2016 in retaliation for the PREA complaint Curtis filed against him four months before.

With regard to the remaining four Defendants, however, Curtis has not established the requisite causal connection. With regard to Wyatt, Curtis alleges that she conducted an inadequate investigation by failing to interview other inmates who were in the shower house on March 8, 2016. [DN 69-1 at 1.] Additionally, Curtis states that Wyatt, Morrison, and White all improperly "sided with Defendant Bradford's statement," when there was no physical evidence to corroborate the accusation that Wilson kissed him in the shower. [*Id.* at 1–3.] These allegations are insufficient, without more, to give rise to an inference of retaliatory motive. Curtis has never alleged, nor have Wilson or Darby, that Wyatt, Morrison, or White were ever *aware of, believed*, or *had reason to think* that Officer Bradford's accusations of inappropriate sexual behavior were false and that they prosecuted Curtis anyway. Additionally, Curtis does not provide any kind of a causal link to explain why these Defendants might have had a motive to retaliate against Curtis on the basis of the PREA complaint Curtis made against *another individual*, Officer Bradford, four months earlier.

Finally, Curtis's allegation that White ultimately granted his second appeal also does not create an inference of retaliatory motive on behalf of White. Curtis only states that White granted his second appeal "at the last minute when [his] 90 day segregation . . . time was about finished," and that in doing so, White "voided" the disciplinary write-up. [DN 89 at 2.] Though Curtis suggests that this means White must have "seen how something was wrong" with Curtis's write-up, this conclusory allegation, without supporting evidence, is insufficient to infer that White denied Curtis's first appeal in retaliation for the PREA complaint Curtis filed against Officer Bradford in November 2015. *See Bey v. Palmer*, No. 16-2790, 2017 WL 2820953, at *2 (6th Cir. May 23, 2017) ("Bey's temporal proximity is a gap of more than one month between the filing of his grievance and the notice of credit loss, with no further support beyond conclusory allegations of retaliatory motive."). Rather, the only Defendant against which Curtis has made specific, non-conclusory allegations which could permit an inference of retaliatory motive is Officer Bradford. Accordingly, Defendants' motion for summary judgment with regard to Defendants Wyatt, Morrison, and White is granted.

Finally, Defendants argue that, even if Curtis can make out a prima facie case, including retaliatory motive, if they "can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) and *Thaddeus–X,* 175 F.3d at 399); [DN 67-1 at 7.] This argument is now only relevant to the single remaining Defendant, Officer Bradford. And while this is generally a correct statement of the law, Officer Bradford has not made the requisite showing here. In his affidavit, Officer Bradford states:

> Sexual activity in prison puts the safety and security of those within the [prison] at risk and is in direct violation of CPP 15.2 which sets out the offenses that are in violation of Department of Corrections rules and regulations.

[DN 67-3 at 2.] According to Defendants, this statement "show[s] that [he] would have taken the same action towards Plaintiff in the absence of his protected activity." [DN 67-1 at 7.] However, here, the very subject of Officer Bradford's argument is a jury issue; specifically, whether Curtis and Wilson were, in fact, engaging in sexual activity in the shower or whether Officer Bradford fabricated the accusation in retaliation. If a jury finds that the accusation was false, then Officer Bradford cannot succeed on the argument that he would have taken the same action regardless of Curtis's protected activity because of the danger of sexual activity in prison. Accordingly, this defense does not entitle Officer Bradford to summary judgment in this case.

Finally, in Curtis's motion for summary judgment, he states that he has submitted evidence in support of his claim, including other inmates who will testify that Curtis broke no rules in the shower on March 8, 2016. [DN 64 at 1–2.] While this is correct, this does not entitle him to summary judgment, as Officer Bradford has submitted his own affidavit asserting the opposite. Accordingly, Curtis's motion is denied. However, the parties' conflicting evidence does create a genuine dispute of fact and does entitle Curtis to a trial on his First Amendment claim against Defendant Bradford.

CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment, [DN 67], is **GRANTED IN PART AND DENIED IN PART**. It is granted with regard to Defendants Samantha Wyatt, William Morrison, and Randy White, and therefore the Clerk is directed to **TERMINATE** these Defendants from the action. It is denied with regard to Defendant Michael Bradford, against whom Plaintiff's First Amendment retaliation claim may proceed. Plaintiff's

11

motion for summary judgment, [DN 64], is **DENIED**. A Telephonic Status Conference is **SET** for **June 5, 2018 at 1:30 p.m. Central Time**. The parties shall connect to the conference by dialing 1-877-848-7030 and entering the Access Code, 2523122#, and then when prompted press # again to join the call.

    **IT IS SO ORDERED**

Date:

cc:    Counsel

    *Pro se* plaintiff
    Tori T. Curtis
    226115
    EASTERN KENTUCKY CORRECTIONAL COMPLEX
    RHU-Dorm 5-CL-14
    200 Road to Justice
    West Liberty, KY 41472